### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| TAMERA FLETCHER, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　- against -<br><br>THE COCA-COLA COMPANY,<br>　　　　　　Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Tamera Fletcher ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.　TEQUILA AND MARGARITAS

1.　The source of tequila is the blue agave plant, a succulent with large leaves and pointy tips, native to regions of the Americas.[1]



2.　Standards for tequila production were established by the Norma Oficial

---

[1] A succulent plant is one that retains water in its leaves in dry climates.

Mexicana ("NOM"), and adopted by the United States, requiring that it contain not less than 51% blue agave sugars, prior to fermentation.[2]

3.     These "specification[s] ensure[] a consistent flavor profile…[because] [T]he sugars extracted from the heart (piña) of the blue agave," along with "the aging process," "gives tequila its distinct taste and characteristics."[3]

4.     While "Versatility is tequila's hallmark," it is best known as part of a margarita, defined by Merriam-Webster as "a cocktail consisting of tequila, lime or lemon juice, and an orange-flavored liqueur."[4]

5.     Wikipedia defines a "margarita" as "a cocktail consisting of tequila, orange liqueur, and lime juice[.]"

6.     The International Bartenders Association ("IBA") recognizes a "margarita" as a classic cocktail made with tequila.

7.     Acclaimed bartender Michael Turback emphasized that "Tequila, sugar or simple syrup, lime juice, ice, and orange liqueur are all required ingredients for a

---

[2] NOM-006-SCFI-2005, Alcoholic Beverages – Tequila – Specifications; 27 C.F.R. § 5.148(b)(1).
[3] Suavecito Tequila, Authentic Mexican Tequila: Discovering the Differences That Matter, Sept. 7, 2023; Olmeca Altos, Aging Tequila; Cupcakes and Cutlery, Best Tequila for Margaritas.
[4] Kathy A. McDonald Celebrity Tequila Brands and the Spirit's Versatility Make a Compelling Combination, Variety, Feb. 6, 2020.

real Margarita."[5]

8.   A popular Florida cocktail bar agreed that "The first and foremost ingredient in a classic margarita is tequila."[6]

9.   The combination of these ingredients is what "makes this drink so tasty."

10.   The result is that "The flavor of the classic Margarita cocktail is a complex one, comprised of several hundred compounds," which is what "makes this drink so tasty."[7]

11.   According to flavor scientists, "Tequila has the most diverse flavor profile of compound classes, but contributes to the [margarita] flavor mostly with esters and alcohols."

12.   The "tequila brings a unique warmth and distinctive agave flavor" to a margarita.

13.   The "Lime juice and orange peel oil (which is part of the orange liqueur) contribute mostly with terpenes," providing this cocktail's "tangy citrus flavor."

14.   Though "A margarita bears a resemblance to a daiquiri in its balance of

---

[5] https://adashofbitters.com/what-does-a-margarita-taste-like/

[6] https://southavenuebarfl.com/blog/what-does-margarita-taste-like/

[7] Sanja Eri et al., "The Flavor of the Classic Margarita Cocktail," in Hispanic Foods: Chemistry and Flavor, American Chemical Society ("ACS") Symposium Series, Vol. 946, pp. 179-191, Oxford University Press, eds. Michael H. Tunick and Elvira González de Mejia (2007).

sweet and sour, [] it's the unique tequila flavor," described as "earthy-yet-sweet," "that distinguishes it."[8]

15.   A margarita aficionado asked rhetorically, "Who can deny the bright, tenacious flavor of tequila with freshly squeezed lime juice, a hit of orange liqueur for sweetness, and a salt rim to balance the flavors?"[9]

16.   Since "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate" whether alcoholic beverages they buy are, or contain distilled spirits, the Federal Alcohol Administration Act ("FAAA") required truthful disclosure to protect the public against unscrupulous sellers.[10] 27 U.S.C. § 201 *et seq*., e.g., 27 U.S.C. § 205(e) ("Labeling") (declaring it "unlawful" to package and label "any distilled spirits, wine, or malt beverages" in a manner which misleads consumers, "irrespective of falsity," with respect to, *inter alia*, "the[ir] identity and quality."); Title 27, Code of Federal Regulations

---

[8]https://www.ohlq.com/ohlq-hub/news-and-lifestyle/spirit-spotlight/difference-between-anejo-and-reposado-tequila

[9] https://savoringtoday.com/classic-margarita/

[10]  Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

("C.F.R."), Parts 1 to 39, Tax and Trade Bureau ("TTB").

17.   Florida is authorized to adopt these rules and to the extent it has not, they are followed by regulatory authorities in this State. Fla. Stat. § 565.08.

## II.   LABELING IS MISLEADING BECAUSE PRODUCT LACKS MARGARITA INGREDIENT OF TEQUILA

18.   To appeal to the 60% of Americans who identify a margarita as their cocktail of choice, The Coca-Cola Company ("Defendant") sells ready-to-drink ("RTD") beverages represented as "Margarita Hard Seltzer" across images of what appear to be agave plants, the source crop for tequila, under the Topo Chico brand ("Product").



19.   The labeling and packaging is false and misleading for multiple reasons.

20.   First, despite the label statement of "Margarita" with a backdrop of agave plants, the source of this cocktail's main ingredient, the fine print of the ingredient

list on the back reveals the absence of tequila, identifying only "alcohol."[11]



21.   Even if purchasers find and read the ingredients, they will be misled because it lists only "Alcohol," instead of truthfully disclosing its source as not from tequila, but sugar or another source, like grains, prepared not from distillation but brewing or fermentation, such as "Alcohol (from fermented sugar)."

22.   Second, though the front label must have a "[required] statement of composition," "Margarita Hard Seltzer" does not "identify the base class and/or type designation of th[is] malt beverage…[(] e.g., 'beer,' 'lager beer,'…or 'malt beverage'[)]." 27 C.F.R. § 7.147(b)(1); 27 C.F.R. § 7.63(a)(2); 27 C.F.R. § 7.147(a).

---

[11] **SIGNATURE MARGARITA: INGREDIENTS:** FILTERED CARBONATED WATER, ALCOHOL, LIME JUICE FROM CONCENTRATE, AGAVE SYRUP, CITRIC ACID, NATURAL FLAVORS, SALT*, SODIUM CITRATE, SUCRALOSE, MAGNESIUM CHLORIDE*, POTASSIUM CHLORIDE*. (*MINERALS FOR TASTE)

23.   Instead, the only place buyers are told that "Margarita Hard Seltzer" is another name for "beer" is beneath the Nutrition Facts on the back.



24.   Third, though the "base class and/or type designation" of the Product is "Mandatory information," this inconspicuous disclosure of "beer" means it is not "readily legible to potential consumers under ordinary conditions," because few, if any, would turn the packaging around and know to look for this. 27 C.F.R. § 7.52(a).

25.   Fourth, "Margarita Hard Seltzer" is not the name of this "product[s] [as] known to the trade." 27 C.F.R. § 7.141(a).

26.   Such a description, by itself, was found by the TTB as insufficient to truthfully inform consumers of what they were buying.

27.   This is because "hard seltzer" lacks a commonly recognized or mandated definition.

28.   Many beverages described as "hard seltzer," like Defendant's "Margarita" variety, are based on neutral, flavorless alcohol obtained from fermentation or brewing of sugar or wheat, to which flavors are added.

29.   However, numerous competitor brands, such as Mamitas and High Noon, sell beverages described as "hard seltzer" containing real tequila and vodka, alcoholic spirits obtained from distillation.



30.   Fifth, while use of a cocktail name like "margarita" as part of the

Product's name is not necessarily misleading, when "Margarita" is viewed with backdrop of agave plants, these statements and graphics "tend[] to create a false or misleading impression that the [Margarita Hard Seltzer] contains [the] distilled spirit[]" of tequila. 27 C.F.R. § 7.128(a); 27 C.F.R. § 7.128(b)(3).

31.   Spirit industry analysts have confirmed that domestic sales of the agave spirits of tequila and mezcal have overtaken whiskey and vodka.[12]

32.   Reasons include (1) their heritage as some of the oldest distilled spirits, (2) mixability and ease of use in cocktails, (3) its reputation as a crop untouched by modern agriculture, as opposed to traditional grains, and (4) numerous celebrity-owned premium tequila brands, providing additional exposure to the public.

33.   This increased exposure means the average consumer knows that the pictures on the label of the Margarita Hard Seltzer are the agave plant, shown together with a real agave field, and will expect the use of this crop means the Product will contain the agave spirit of tequila.



---

[12] Jessica Mason, US consumers to spend more on mezcal and Tequila than whiskey, The Drinks Business, June 20, 2022.



34.   Sixth, "Margarita Hard Seltzer" above images of agave crops "is misleading to consumers as to the [] origin, identity, or other characteristics of the [Product]," because it causes them to expect the agave spirit of tequila. 27 C.F.R. § 7.122(a).

35.   This is based on consumers' association of a margarita with a cocktail containing tequila and their awareness of the agave plant as the source of tequila.

36.   Even though the label does not use the word, "tequila," "Margarita" and pictures of agave plants "create a misleading impression…indirectly through ambiguity, omission, inference, or by the addition of irrelevant…matter" that the Product contains tequila. 27 C.F.R. § 7.122(b)(1).

37.   Seventh, even if "Margarita" purports to only describe the taste of this "Hard Seltzer" and that the pictures of agave plants refer to its use of agave ingredients, such "otherwise truthful statement[s] [are] misleading because of the[ir] omission of material information." 27 C.F.R. § 7.122(b)(1).

38.   The Product's front label omits "material information" that the agave

ingredient it contains is "agave syrup," a sweetener, not the agave spirit of tequila, and is a "Margarita-style" beverage, "which is necessary to prevent the [identified] statement[s] from being misleading." 27 C.F.R. § 7.122(b)(1).

39.    For example, competitors like Truly sell "Margarita Hard Seltzer," made in roughly the same manner as Defendant's, through a flavorless alcohol base by fermentation or brewing.



40.    However, Truly prominently discloses this beverage is in the semblance of a margarita, through the statement, "Margarita Style."

41.    Additionally, the Truly product references agave, but is clear that this refers to "Agave Nectar," a sweetening ingredient.

42.    This information prevents purchasers from being misled by expecting the agave spirit of tequila.

43.    Eighth, canned margaritas containing tequila are also sold by competitor

brands like BuzzBox and Dulce Vida.



44.   The availability of products labeled as margaritas which contain tequila supports the expectation of consumers that Defendant's "Margarita Hard Seltzer" will contain this agave spirit, especially because of the pictures of agave plants.

45.   The availability of products labeled as margaritas which contain tequila causes or could cause consumers to buy Defendant's "Margarita Hard Seltzer" instead of those containing tequila.

### III.  CONCLUSION

46.   The labeling of "Margarita Hard Seltzer" across a field of agave plants suggests and tells consumers they are buying a canned version of a margarita, defined by its presence of tequila, in a non-de minimis amount, in absolute and/or relative terms.

47.    Instead, consumers get an alcoholic beverage without tequila, replaced with an alcohol base produced through fermentation or brewing.

48.    Alcohol produced through fermentation and brewing costs less than alcohol produced through distillation, like tequila.

49.    Alcohol produced through fermentation and brewing lacks the unique taste produced through distillation, like tequila.

50.    As a result of the false and misleading representations and omissions identified here, the Product is sold at a premium price, at or around $17.99 for twelve 12 oz cans, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.[13]

## JURISDICTION

51.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

52.    The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

53.    Plaintiff is a citizen of Florida.

54.    Defendant is a citizen of Delaware based on its place of incorporation.

---

[13] Other misrepresentations and omissions may relate to the failure to disclose the presence of the artificial sweetener of sucralose. 27 C.F.R. § 7.147(b)(4).

55.   Defendant is a citizen of Georgia based on its principal place of business.

56.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

57.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, Alcohol Beverage Control ("ABC") stores, ethnic food stores and/or online in this State to citizens of this State.

58.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ABC stores, ethnic food stores and/or online in this State to citizens of this State.

59.   Defendant transacts business in Florida, through the sale of the Product to citizens of Florida from grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ABC stores, ethnic food stores and/or online in this State to citizens of this State.

60.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

14

61.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

62.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its origins, type, contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

63.   Venue is in this District with assignment to Miami Division because a substantial or the entire part of the events or omissions giving rise to these claims occurred in Miami-Dade County, which is where Plaintiff's causes of action accrued.

64.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling and packaging identified here in Miami-Dade County.

65.   Plaintiff resides in Monroe County.

## PARTIES

66.   Plaintiff Tamera Fletcher is a citizen of Monroe County, Florida.

67.   Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Georgia.

68.   Defendant is one of the world's largest seller of beverages.

69.   Defendant sells alcoholic beverages under the Topo Chico brand, including the Product at issue here.

70.   Plaintiff is like most consumers who prefers alcoholic beverages based on distilled spirits over those based on fermentation and/or brewing, due to reasons including superior quality and taste.

71.   Plaintiff is one of the 60% percent of Americans for whom the margarita is a favorite alcoholic beverage.

72.   Plaintiff is like all consumers and the public who associate a margarita with tequila and expect this distilled spirit to be part of any alcoholic beverage described as a margarita, including one described as a "Margarita Hard Seltzer," with a background of agave plants, known to them as the source of tequila.

73.   Plaintiff is like all consumers who look to the front label of products they buy to see what they are buying and to learn basic information.

74.   Plaintiff is like all consumers and is accustomed to the front label of packaging telling them if what they are buying contains the ingredients expected for

that product.

75.   Plaintiff is like almost all consumers of margaritas and/or tequila, who can identify what the agave plant looks like, by its unique shape and pointy leaves.

76.   In the context of seeing a product labeled as a "Margarita Hard Seltzer," Plaintiff expected the Product contained alcohol from the agave plants identified on the label, tequila.

77.   Plaintiff expected the Product to contain tequila, and that it would be present in more than a de minimis amount.

78.   Plaintiff expected more than a margarita "taste," but the cocktail known as a margarita, based on traditional margarita ingredients, the most important of which is tequila.

79.   Plaintiff read, saw and relied on the statements of "Margarita Hard Seltzer" across images of the agave plants, and expected this meant the Product would contain the agave spirit of tequila, and/or would contain more than a de minimis amount of tequila.

80.   Plaintiff did not expect the Product to not contain tequila or that its alcohol content would be derived from fermentation and brewing compared to distillation.

81.   Plaintiff purchased the Product between January 2020 and January 2024, at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club

stores, drug stores, convenience stores, specialty grocery stores, ABC stores, ethnic food stores and/or online in this State, in Miami-Dade County, and/or other areas.

82.   Plaintiff bought the Product at or around the above-referenced price.

83.   Plaintiff paid more for the Product than she would have had she known (1) it was not a margarita, and (2) it did not contain tequila, and if it did, not in more than a de minimis amount, as she would not have bought it or would have paid less.

84.   The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

85.   Plaintiff seeks to represent the following class:

> All persons in Florida who purchased the Product in Florida during the statutes of limitations for each cause of action alleged in reliance on the representations and omissions identified here.

86.   Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

87.   Common questions of issues, law, and fact predominate and include

whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

88.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

89.   Plaintiff is an adequate representative because her interests do not conflict with other members.

90.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

91.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92.   The class is sufficiently numerous and likely includes several thousand people.

93.   This is because Defendant sells the Product to consumers through hundreds of third-party retailers and online in the State Plaintiff is seeking to represent.

94.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),

Fla. Stat. § 501.201, *et seq*.

95.   Plaintiff incorporates by reference paragraphs 1-50.

96.   The purpose of FDUTPA is to protect consumers against unfair and deceptive practices. Fla. Stat. § 501.202(2).

97.   This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection. Fla. Stat. § 501.202(3).

98.   FDUTPA considers false advertising and deceptive practices in the conduct of any trade or commerce to be unlawful. Fla. Stat. § 501.204(1).

99.   Such "unfair or deceptive acts or practices" must be construed so that "due consideration and great weight shall be given to the interpretations of the FTC and the federal courts relating to [the FTC Act,] 15 U.S.C. § 45(a)(1)." Fla. Stat. § 501.204(2).

100. Violations of FDUTPA can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. Fla. Stat. § 501.204(2); 15 U.S.C. § 45 *et seq*.

101. An FDUTPA violation occurs whenever "Any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*." are violated. Fla. Stat. § 501.203(3)(a).

102. An FDUTPA violation occurs whenever "The standards of unfairness

and deception set forth and interpreted by the Federal Trade Commission ('FTC') or the federal courts" relating to the FTC Act are violated. Fla. Stat. § 501.203(3)(b).

103. An FDUTPA violation occurs whenever "Any law, statute, rule, regulation, or ordinance which proscribes…unfair, deceptive, or unconscionable acts or practices" is violated. Fla. Stat. § 501.203(3)(c).

104. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

105. Defendant's false and deceptive representations and omissions with respect to the Product's alcohol source, that it contained tequila, as opposed to only alcohol obtained by fermentation or brewing, are material in that they are likely to influence consumer purchasing decisions.

106. This is because consumers expect alcoholic beverages, especially those named after cocktails, to be based on distilled spirits instead of fermentation and brewing.

107. The Product's labeling and packaging violated the FTC Act and thereby violated FDUTPA because it expressly states it is a "Margarita Hard Seltzer" across pictures of agave plants, when this is false and/or misleading.

108. The Product's labeling and packaging violated the FTC Act and thereby

violated FDUTPA because it impliedly suggests it is a "Margarita," because this cocktail is based on tequila, which comes from the agave plants pictured on the front label.

109. The labeling and packaging of the Product violated the FTC Act and thereby violated FDUTPA because the representations of "Margarita Hard Seltzer," with a backdrop of agave plants, created the erroneous impression it contained tequila in more than a de minimis amount, as opposed to its alcohol content being based on fermentation and brewing.

110. Violations of FDUTPA can be based on public policy, established through statutes, law or regulations.

111. The labeling of the Product violates laws, statutes, rules and regulations "which proscribe[]…unfair, deceptive, or unconscionable acts or practices," thereby violating FDUTPA. Fla. Stat. § 501.203(3)(c).

112. The labeling of the Product violates laws, statutes, rules and regulations that are intended to protect the public.

113. The labeling of the Product violated FDUTPA because the representations and omissions are misleading, "irrespective of falsity."

114. The labeling of the Product violated FDUTPA because the representations and omissions of "Margarita Hard Seltzer" with a backdrop of agave plants, when it did not contain tequila in any or in more than a de minimis amount,

but was based on alcohol obtained via fermentation or brewing, was unfair and deceptive to consumers. Fla. Stat. § 501.204(1).

115. The labeling of the Product violated FDUTPA because the representations and omissions of "Margarita Hard Seltzer" with a backdrop of agave plants, when it did not contain tequila in any or in more than a de minimis amount, but was based on alcohol obtained via fermentation or brewing, was contrary to the FAAA, and where applicable, identical state laws, and accompanying regulations.

116. The FAAA and its regulations prohibit consumer deception by companies in the labeling of alcoholic beverages. Fla. Stat. § 501.203(3)(c).

117. The labeling of the Product violated FDUTPA because the representations and omissions of "Margarita Hard Seltzer" with a backdrop of agave plants, when it did not contain tequila, or if it did, in any more than a de minimis amount, but was based on alcohol obtained via fermentation or brewing, was contrary to the FAAA's directive to prohibit deception of the consumer. 27 U.S.C. § 205(e).

118. The FAAA and its regulations prohibit consumer deception by companies in the labeling of alcoholic beverages.

119. These include the following federal and state laws and regulations, described above.

|           Federal           |           State            |
| :-------------------------: | :------------------------: |
|      27 U.S.C. § 205(e)      |     Fla. Stat. § 565.08    |
|     27 C.F.R. § 7.52(a)      |                            |
|    27 C.F.R. § 7.63(a)(2)    |                            |
|     27 C.F.R. § 7.122(a)     |                            |
|   27 C.F.R. § 7.122(b)(1)    |                            |
|     27 C.F.R. § 7.128(a)     |                            |
|   27 C.F.R. § 7.128(b)(3)    |                            |
|     27 C.F.R. § 7.141(a)     |                            |
|     27 C.F.R. § 7.147(a)     |                            |
|   27 C.F.R. § 7.147(b)(1)    |                            |
|   27 C.F.R. § 7.147(b)(4)    |                            |

120. Plaintiff believed the Product was a margarita, defined by the presence of tequila and the flavor of tequila and contained tequila, or contained more than a de minimis amount of tequila, based on the statement, "Margarita" before "Hard Seltzer," and backdrop of agave plants, even though its alcohol was based on fermentation and brewing, not distillation and the amount of tequila was de minimis or negligible, if any.

121. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under FDUTPA.

24

122. Plaintiff will produce evidence showing how she and consumers paid more than they would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

123. As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages by her payment of a price premium for the Product, which is the difference between what she paid based on its labeling and marketing, and how much it would have been sold for without the misleading representations and omissions identified here.

**COUNT II**
<u>False and Misleading Adverting,
Fla. Stat. § 817.41</u>

124. Plaintiff incorporates by reference paragraphs 1-50.

125. Defendant made misrepresentations and omissions of material fact, by identifying and naming the Product a "Margarita Hard Seltzer," with a backdrop of agave plants, when it did not contain tequila, or if it did, in a de minimis amount, because its alcohol content was based on fermentation and brewing, through its advertisements and marketing in various forms of media, product packaging and descriptions, and/or targeted digital advertising.

126. Defendant failed to truthfully disclose that the Product did not contain tequila, or if it did, it was present in a de minimis amount, because its alcohol content

was based on fermentation and brewing.

127. Defendant falsely and/or deceptively stated and/or implied the Product contained tequila and did so in more than a de minimis amount, even though it did not contain tequila, or if it did, in a de minimis amount, because its alcohol content was based on fermentation and brewing.

128. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, since consumers buying alcoholic beverages described as margaritas, with pictures of the source from which tequila is made, agave, expect such products to contain tequila, and to have more than a de minimis amount of tequila, instead of being based on fermentation or brewing, which describes what the Product was, a "beer."

129. Defendant knew its statements and omissions were false and/or misleading.

130. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

131. Plaintiff and class members did in fact rely upon these statements and omissions.

132. Reliance was reasonable and justified because of the public trust placed in alcoholic beverages sold under the Topo Chico brand, a company known for decades for its authenticity and quality mineral water, and thus consumers expect

such products under this brand to be labeled accurately and in a non-misleading manner.

133. Plaintiff paid more for the Product, as she would not have paid as much or bought it if she knew that it did not contain tequila or if it did, in a de minimis amount, because its alcohol content was based on fermentation and brewing.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   February 29, 2024

Respectfully submitted,

 /s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office P.A.

*Counsel for Plaintiff*

**Certificate of Service**

I certify that on February 29, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Will Wright